UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LATEE ROBINSON,

                              Plaintiff,

    v.                                   No. 10-CV-993
                                              (LEK/DRH)

SGT. ROME, Prison Watch Commander; CHASE; THOPMAS, # Sergeant; BISHOP, Shield # Sergeant; D. GREENE, Shield # Co.; R. BESSETTE, Shield # Co.; TEN JOHN DOE, Shield # Co.; JOHN DOE, # Lt. watch commd.; JOHN DOES, Shield # Superintendent; GARNEAU, Shield # RN; STURGER, Shield # RN Medical; ATKINSON, Shield # RN medical; JOHNSTON, Shield # DR P.A. medical; and CRAIG ROWE,[1]

                              Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

LATEE ROBINSON
Plaintiff Pro Se
06-A-1498
Auburn Correctional Facility
Post Office Box 618
Auburn, New York 13021

HON. ERIC T. SCHNEIDERMAN           DEAN J. HIGGINS, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

---

    [1] Robinson refers to both defendant Rome and defendant Rowe. In defendants memorandum of law, they identify these two individuals as the same person. Defs. Mem. of Law (Dkt. No. 32-1) at 4. This appears to be a typographical error or innocent oversight. Accordingly, this individual will be referred to herein as Rowe.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Latee Robinson ("Robinson"), an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, eleven named DOCCS employees and twelve "John Doe" defendants,[3] violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b). Dkt. No. 32. Robinson opposes the motion. Dkt. No. 37. For the reasons which follow, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are related herein in the light most favorable to Robinson as the non-moving party. See subsection II(A) infra.

Robinson initially filed this case in the Western District of New York. Robinson v. Viscuso, No. 10-CV-326. Dkt. No. 5. That districts ordered, inter alia, that claims 9-12 of the complaint, regarding Robinson's treatment between July and September, 2008 at Upstate Correctional Facility ("Upstate"), be severed and transferred to this district. Dkt. No. 4 at 8, 17. In addition to filing his complaint, Robinson also filed six packets of documents as attachments to the complaint. Dkt. No. 3.[4] These packets contain medical records,

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] See note 1 supra.

[4] These documents may be considered on a motion under Rule 12(b)(6). See Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008); Newman &

misbehavior reports, disciplinary dispositions, Freedom of Information Law (FOIL) requests, grievances, and grievance determinations throughout his period of incarceration.

On July 24, 2008, while incarcerated at Upstate, Robinson received a misbehavior report written by defendant Greene for self-mutilation. Dkt. No. 3-1 at 119. The misbehavior report stated that Greene found Robinson cutting himself with a razor in his cell, contacted his supervisor, defendant Bishop, who notified the medical staff, and escorted Robinson from his cell to a holding pen. Id. The misbehavior report was later dismissed due to Robinson's mental health. Dkt. No. 3-1 at 120-21. Robinson contends that defendants "expung[ed] records and photo[]s [and] manipulate[d] medical . . . and mental health records . . . .", essentially alleging that the information contained in the misbehavior and medical documentation was false. Compl. at 30-31.

On August 1, 2008, Robinson received another misbehavior report. Dkt. No. 3-1 at 122. Defendant Bessette authored the report stating that defendant Chase gave Robinson a direct order, Robinson failed to comply with the order, and force was employed. Id. Robinson contends that he was harassed and manipulated into following a movement order to leave his cell and proceed to the infirmary. Compl. at 32. These actions were part of an alleged "malicious conspiracy vindictive retialation [sic] . . . ." Id. In a grievance dated August 5, 2008, Robinson complained that an unknown sergeant and nurse fabricated the events surrounding Robinson's alleged mental health refusal and suicidal ideations. Dkt. No. 3-6 at 9.

While in the infirmary on August 4, 2008, Robinson claims that he was physically and

---

Schwartz v. Asplundh Cortec Indus., Inc. v. Sun Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

sexually assaulted in the middle of the night by numerous corrections officers that were not wearing identifying information. Compl. at 33. Robinson also contends that defendant Rowe observed these events but failed to intervene and that the subsequent created medical records were removed, presumably by defendant nurse Sturger. Id. at 33-34. Robinson filed multiple grievances on August 8, 2008, regarding his alleged threats to kill himself and the staff's response to his statements as well as the medical care that he was receiving. Dkt. No. 3-4 at 44-48. A few days later, Robinson again filed grievances about how corrections employees were modifying and deleting parts of his records, as well as the care provided to him through the Office of Mental Health. Dkt. No. 3-4 at 49-50.

Robinson further alleges that from the date of the assault through mid-August, defendants Thompson, Chase, Atkinson, and Garneau failed to provide medical assistance and modified or deleted the medical records which were subsequently generated after the attack. Compl. at 35. An ambulatory health record dated August 14, 2008, authored by defendant Garneau discussed Robinson's allegations of sexual abuse and the need to conduct an examination within seventy-two hours of the assault. Dkt. No. 3-3 at 2. A later ambulatory health record dated August 20, 2008 also mentions allegations of sexual abuse and indicated that Robinson's "chart [was] not available to determine if [the] incident [was] reported . . . previous to this date." Dkt. No. 3-3 at 4.

## II. Discussion

Robinson claims that his Eighth Amendment rights were violated when he was subjected to excessive force, defendants failed to protect him, and defendants were deliberately indifferent to his medical needs. Liberally construing Robinson's complaint, he has also

alleged First Amendment violations for filing false misbehavior reports. Defendants contend that (1) the Eleventh Amendment bars recovery against defendants in their official capacity, (2) Robinson has failed to state sufficient facts to support a claim, and (3) Robinson has failed to allege the personal involvement of defendants,

### A. Legal Standard

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . .

5

. .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks dismissal against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191-92 (2d Cir.2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.' " (citations omitted)).

### B.  Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
>
> (4) the defendant was grossly negligent in supervising subordinates

6

who committed the wrongful acts, or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[5]

### 1. Bishop and Greene

Robinson contends that Greene authored a false misbehavior report alleging that Robinson was mutilating himself and that Bishop contacted the medical staff and failed to object to the resulting misbehavior report or subsequent disciplinary hearing. By both being directly involved in the events leading to an alleged false misbehavior report and disciplinary proceeding, Robinson has alleged personal involvement of both defendants. Whether or not the claims which Robinson alleges are feasible are to later be determined. Accordingly, defendants' motion on this ground should be denied.

### 2. Bessette and Chase

Robinson alleges that Bessette authored a false misbehavior report which stated that

---

[5] Various courts in the Second Circuit have discussed how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several district courts have done so); Kleehammer v. Monore County, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

7

Chase gave Robinson a direct order with which he failed to comply, requiring the use of force against Robinson. Robinson also alleges generalized complaints of harassment and abuse. Both defendants were admittedly directly involved in this incident which resulted in force being used. Accordingly, both defendants were directly involved in alleged First and Eighth Amendment violations. Accordingly, defendants' motion on this claim should be denied.

### 3. Rome, Thopmas, Garneau, Sturger, and Atkinson

Robinson contends that on August 4, 2008 he was physically and sexually assaulted while Rowe looked on and Sturger failed to provide him with subsequent, adequate medical care. Robinson further asserts that in the weeks which followed, Thopmas, Garnea and Atkinson, failed to document and provide necessary medical care for the injuries he sustained as a result of the attack. These allegations directly implicate each of these defendants in various Eighth Amendment violations. Accordingly, defendants' motion on this claim should be denied.

### 4. Johnston

While defendant Johnston is listed in the body of the complaint, there are no allegations against him or her within the paragraphs of the complaint which were severed and sent to the Northern District for consideration. Accordingly, Robinson has failed to allege any involvement of Johnston, direct or otherwise. Therefore, defendants' motion to dismiss as to Johnston should be granted.

**C. Eleventh Amendment**

Robinson sues the defendants in both their individual and official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Robinson seeks monetary damages against defendants in their official capacities for acts occurring within the scope of their duties with DOCCS. Thus, the Eleventh Amendment bar applies and serves to prohibit Robinson's claim for monetary damages

9

against the individual defendants in their official capacities.

Accordingly, it is recommended that defendants' motion be granted on this ground and that judgment be granted to all defendants as to Robinson's claims against them in their official capacities.

### D. Failure to State a Claim

#### 1. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII.

#### a. Medical Care

This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a

serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Defendants contend that Robinson has failed to proffer facts sufficient to plead an Eighth Amendment violation. Robinson contends that on August 4, 2008, he was physically assaulted, being punched and kicked repeatedly, and sexually abused, being sodomized and molested. After the incident, Robinson claims to have received no medical attention. Construing the facts in Robinson's favor, being beaten and raped would lead to a medical condition for which any reasonable person would seek medical attention. Accordingly, Robinson has pleaded facts sufficient to satisfy the objective prong of the analysis.

Moreover, having an inmate tell medical staff that these things happened, as is documented in Robinson's health record, and not having appropriate testing or follow-up care done could establish a serious disregard for those aforementioned medical conditions.

Accordingly, defendants' motion as to Thopmas, Garneau, Sturger, and Atkinson should be denied.

### b. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or

12

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, Robinson indicates that he was subjected to excessive force on multiple occasions. Construing the facts in the light most favorable to Robinson, the two relevant dates where force was used were August 1 and 4, 2008. Bessette and Chase asserted in the August 1 misbehavior report that force needed to be employed to subdue Robinson after he refused a direct order. The extent of the force used and the circumstances under which it was employed, however, are present questions of fact given the conflicts in the descriptions by Robinson and the defendants. Given that Robinson contended the environment surrounding his incarceration was manipulative and malicious, and that defendants do not contest that force was used, it appears that Robinson has alleged sufficient facts plausibly to contend that excessive force was used by Bessette and Chase.

13

The same is true for the allegations surrounding the events of the evening of August 4. Robinson's allegations that he was physically attacked, in the middle of the night, while sleeping, indicate that there was no need to deploy any physical force and that whatever force was used was unreasonable. Moreover, "[i]t is well established that the sexual exploitation of prisoners by prison guards amounts to a constitutional violation." Qasem v. Toro, 737 F. Supp. 2d 147, 153 (S.D.N.Y. 2010) (citing cases).

Accordingly, defendants' motion on this ground should be denied.

### c. Failure to Protect

The Eighth Amendment also obliged defendants to protect Robinson from known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 832. Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm," and (2) the prison office must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

14

harm exists, and he must also draw the inference." Matthews v. Armitage, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999) (internal citations and quotations omitted).

In this case, Robinson indicates that Rowe observed Robinson being attacked on the evening of August 4. While Rowe may not initially have known or anticipated that Robinson was in any danger, construing the facts in the light most favorable to Robinson would indicate that Rowe was put on notice of the danger once the multitude of corrections officers began physically and sexually assaulting Robinson. At the moment that Rowe recognized the harm, he was obligated to intervene to terminate it.

Accordingly, defendants' motion on this ground should be denied.

### 2. False Misbehavior Report

Liberally construing Robinson's complaint, he has alleged that defendants Chase, Bishop, Green and Bessette were, in some form or capacity, involved with the filing of false misbehavior reports and other documents in Robinson's files. An inmate has a right not to be deprived of a liberty interest without due process. However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75,

15

79 (2d Cir. 1996). "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham, 89 F.3d at 79). Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.  Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).)).

In this case Robinson alleges that the officers were engaged in a malicious and vindictive conspiracy against him. However, Robinson's allegations are proffered in bare and conclusory terms. See Flarherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ( "[a] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone"). As Robinson's contentions of retaliatory conduct are "in wholly conclusory terms;" the claims are appropriate for dismissal as there is no "colorable suspicion of retaliation . . . [to] support at least documentary discovery." Flaherty, 713 F.2d at 13.

Accordingly, to the extent that there are First Amendment contentions in the complaint, such claims should be dismissed as they are insufficient to state a cause of action.

### III. "John Doe" Defendants

Among the defendants named in the complaint are ten "John Doe" defendants and two other "John Doe" officials. None of these defendants have been otherwise identified or served with process and have not otherwise appeared in the action. Defendants move to dismiss the complaint as to those defendants pursuant to Fed. R. Civ. . 4(m). Defs. Mem.

of Law at 11.

The complaint was filed in this district on April 20, 2010. Dkt. No. 1. Robinson was granted leave to proceed in forma pauperis on August 16, 2010. Dkt. No. 4. This obligated the United States Marshals Service to complete service of process on Robinson's behalf, but Robinson retains the duty to advise the Marshals Service of the last known address of all defendants to facilitate completion of service. Where a defendant has not been served with process within 120 days of the filing of the complaint, the complaint may be dismissed without prejudice as to that defendant. Fed. R. Civ. P. 4(m).

More than the required 120 days have passed since the complaint was filed herein and the twelve "John Doe" defendants have not been served. However, Robinson has not yet enjoyed the opportunity to conduct discovery to assist him in determining the identity and location of any of the unserved defendants. In deference to Robinson's in forma pauperis status, he should be permitted time during discovery to attempt to identify and locate the "John Does" defendants. Accordingly, it is recommended that defendants' motion on this ground be denied without prejudice to renewal at the close of discovery.

## IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 32) be:

1. **GRANTED** as to:

    A. Defendants' claims of Eleventh Amendment immunity and all claims against defendants in their official capacities should be **DISMISSED**;

    B. Any First Amendment claims in conjunction with allegations of retaliation and

the filing of false misbehavior reports with respect to defendants Chase, Bishop, Bessette and Greene; and

> C. Defendant Johnston in all respects; and

2. **DENIED** in all other respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 10, 2012
      Albany, New York

_David R. Homer_
United States Magistrate Judge