**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LATEE ROBINSON,

                    Plaintiff,

     v.                             No. 10-CV-993
                                          (LEK/CFH)

SGT. ROME, Prison Watch Commander;
CHASE; THOPMAS, # Sergeant; BISHOP,
Shield # Sergeant; D. GREENE,
Shield # Co.; R. BESSETTE, Shield # Co.;
TEN JOHN DOE, Shield # Co.; JOHN DOE,
# Lt. watch commd.; JOHN DOES, Shield #
Superintendent; GARNEAU, Shield # RN;
STURGER, Shield # RN Medical; ATKINSON,
Shield # RN medical; CRAIG ROWE,

                        Defendants.[1]

_____

**APPEARANCES:**                **OF COUNSEL:**

LATEE ROBINSON
Plaintiff Pro Se
06-A-1498
Clinton Correctional Facility

---

[1] By Decision and Order dated March 9, 2012, the Court dismissed defendant Johnston from this action and granted Robinson time during discovery to identify and locate the "John Doe" defendants. Dkt. Nos. 41 at 16–18, 44. First Amendment claims against defendants Bishop and Greene, which are Robinson's only claims against them, were also dismissed. Dkt. Nos. 41 at 16–18, 44.

Where a defendant has not been served with process within 120 days of the filing of the complaint, the complaint must be dismissed without prejudice as to that defendant or the court must order "service be made within a specified time." FED. R. CIV. P. 4(m). Here, more than 120 days have passed since Robinson filed his complaint on April 20, 2010. Robinson has not identified and locate any of the "John Doe" defendants after the close of the discovery period. Service of process has not been effected on any of the "John Doe" defendants. Accordingly, any and all claims alleged against said defendant should be dismissed from this action.

Additionally, in their declarations in support of their motion for summary judgment, "Thopmas" is spelled "Thompson" and "Sturger" is spelled "Sturgen." Dkt. Nos. 59-14, 59-15. This appears to be typographical error or innocent oversight in Robinson's complaint. Accordingly, these individuals will be referred to herein as "Thompson" and "Sturgen."

P.O. Box 2002
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN                    COLLEEN D. GALLIGAN, ESQ.
Attorney General for the                                  Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Latee Robinson ("Robinson"), an inmate currently in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS"), brings

this action pursuant to 42 U.S.C. § 1983 alleging that defendants, seven named DOCCS

employees and twelve "John Doe" defendants,[3] violated his constitutional rights under the

Eighth Amendment.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion for

summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 59.  Robinson opposes this

motion.  Dkt. No. 66.  For the following reasons, it is recommended that defendants' motion

be granted.

---

[2]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3]  As indicated in the Report-Recommendation dated February 10, 2012, defendant
Rome and defendant Rowe are the same individual who is referred to herein as Rowe.
Dkt. No. 41 at n. 1.  Further, defendants Bishop and Greene should be dismissed from this
action as the claims brought against them were previously dismissed.  See note 1 supra.

## I. Background

The specific facts of the case are set forth in the Report-Recommendation dated February 10, 2012, familiarity with which is assumed.  See Dkt. No. 41.  The Court dismissed all of Robinson's claims except for the following:  (1) excessive force against defendants Bessette and Chase; (2) failure to protect against defendant Rowe; and (3) medical indifference against defendants Thompson, Garneau, Sturgen, and Atkinson. Id. at 10–15; Dkt. No. 44 (Decision & Order).  The facts discussed will be those relevant to the claims herein remaining and are related in the light most favorable to Robinson as the non-moving party.  See subsection II(A) infra.  Those claims occurred during Robinson's incarceration at Upstate Correctional Facility ("Upstate").

## A.  August 1, 2008 Use of Force Incident

On August 1, 2008, correction officers ordered Robinson to voluntarily leave his cell or he would be forcibly extracted from the cell.  Robinson Dep. (Dkt. No. 59-3)[4] at 12:7–16. Robinson complied and voluntarily left his cell.  Id. at 13:4–14:13.  Defendant Bessette, a correction officer, authored a misbehavior report against Robinson, stating that defendant Sergeant Chase gave Robinson a direct order, Robinson failed to comply with the order, and force was employed.  Dkt. No. 3-1 at 122.  Specifically, after exiting the cell and pat-frisked, Robinson turned towards Bessette and non-parties Moore and Willett, also correction officers, in an aggressive manner.  Dkt. No. 59-4 at 1.  The officers did not give Robinson directions to turn around.  Id. at 6.  Moore placed her left hand on Robinson's

---

[4]    The page numbers following "Robinson Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

3

right shoulder.  Id. at 1, 7.  Bessette took Robinson's left arm with both hands.  Id. at 1, 9.

Willett placed both his hands on Robinson's shoulders.  Id. at 1, 8.  All three officers

together forced Robinson against the wall.  Id. at 1, 7–9.

After this incident, Robinson was examined and determined to have a steady gait with

no visible injuries.  Dkt. No. 59-4 at 2–3, 10.  Photos taken after the incident show that

Robinson was standing and posing without difficulty.  Id. at 12–18.  A video recording of the

incident shows that Robinson left a cell and was pat-frisked against a wall.  Video

Recording - Ex. H (Dkt. No. 65) at 19:03.  Robinson was handcuffed, escorted down the

prison block, and appeared to walk without difficulty.  Id. at 19:06:40.  There is nothing in

the video indicating that Robinson was injured from the pat-frisk or handcuffing.  Non-party

Sheahan, deputy superintendent, reviewed the use of force reports and found that the force

used was consistent with departmental rules.  Id. at 19.  During his deposition for this

action, Robinson testified that no excessive force was used against him on August 1, 2008.

Robinson Dep. at 14:14–24, 24:14–16.


### B.  August 4, 2008 Use of Force Incident

On August 4, 2008, Robinson was housed in the infirmary for threatening to commit

suicide, a threat that Robinson later testified to be a lie.  Robinson Dep. at 24:24–25:23.  It

was the middle of the night, Robinson was hiding from the bright light in the room when he

was pulled off the bed.  Robinson Dep. at 27:20–28:4; Compl. at 33.  Unidentified correction

officers stuffed their gloved hands in Robinson's mouth then physically and sexually

assaulted Robinson while Robinson was on the floor.  Robinson Dep. at 28:23–29:3,

30:23–31:2–10; Compl. at 33.

4

Robinson contends that defendant Rowe, a sergeant, observed these events but failed to intervene. Compl. at 33–34; Robinson Dep. at 30:7–11. Robinson charged against the officers, arrived at a window, and observed Rowe smiling and closing the door. Robinson Dep. at 30:11–15; 33:4–8, 36:1–6. Robinson did not see Rowe during the attack but argued since Rowe was a sergeant and watch commander, Rowe allowed the officers to enter the room and witnessed the assault. Id. at 36:9–14. Robinson could only name Rowe as the defendant who was present. Robinson Dep. at 46:5–15. Rowe attested he never witnessed an attack on Robinson at any time and there was never a use of force report filed documenting the alleged attack. Rowe Decl. (Dkt. No. 59-13) ¶¶ 6, 9.

An ambulatory health record entry dated August 4, 2008 and authored by defendant Sturgen, a nurse, states that Robinson was standing at a cell door, talking to an inmate in Room 10. Dkt. No. 60 at 28. Sturgen offered Robinson sick-call but Robinson refused and made no complaints. Id. Robinson contends that he never saw medical personnel after the assault. Robinson Dep. at 37:4–9. As a result, Robinson contends he bled from his anal and back areas. Id. at 36:24–37:1, 37:10–13.

On August 5, 2008, Robinson was seen at sick-call and provided Ibuprofen for pain relief. Dkt. No. 60 at 27. On August 6, 2008, Robinson denied sick-call by remaining in bed. Id. On August 7, 2008, defendant Atkinson, a nurse, evaluated Robinson and determined that Robinson was fully weight-bearing, upright with a normal gait, and did not exhibit distress. Id. An inmate injury report dated August 7, 2008 and authored by Atkinson indicates that Robinson had a steady gait, exhibited a range of motion and strength in all extremities, teeth as well as mucus membranes in the mouth were intact, a two-centimeter

in length by point-two millimeter in width open area on his mid-back with no drainage[5] or bleeding, and no other marks noted. Dkt. No. 59-6. Robinson was advised to keep the area clean and dry. Id.

On August 14, 2008, defendant Garneau, a nurse, discussed Robinson's allegations of sexual assault. Dkt. Nos. 3-3 at 2, 60 at 24. Robinson was brought to the holding pen to be interviewed by non-party Duval, a sergeant, about the incident. Garneau Decl. (Dkt. No. 59-12) ¶ 9. Garneau notified non-party Dr. E. Weissman about Robinson's assault allegations and did not receive any orders. Id. ¶¶ 10, 20; Dkt. Nos. 3-3 at 2, 60 at 24. Medical records also show that on August 21, 2008, Robinson again claimed that he was sexually assaulted. Dkt. Nos. 3-3 at 4, 60 at 22.

Robinson testified that he was uncertain as to which defendants actually denied him care. Robinson Dep. at 42:1–11. Robinson does not recall how he came up with named defendants Thompson, Garneau, Sturgen, and Atkinson. Id. at 44:14–45:3. Nevertheless, Robinson testified that Sturgen and Atkinson denied him medical attention and Garneau attempted to extract Robinson out of the cell and fabricated allegations against Robinson. Id. at 45:4–46:1.

Thompson attested that as a corrections officer, he is not authorized to provide medical services to inmates and has never provided any services to Robinson. Thompson Decl. (Dkt. No. 59-15) ¶ 5. Thompson was unaware that Robinson was assaulted at Upstate or in 2008 and maintains he was never aware of Robinson requiring medical care then denying

---

[5] Drainage refers to "the systematic withdrawal of fluids and discharges from a wound, sore, or cavity." DORLAND'S ILLUSTRATED MED. DICTIONARY 506 (28th ed. 1994) [hereinafter "DORLAND'S"].

such care.  Id. ¶¶ 6–7.  Robinson remembers the name "Thompson" but does not recall the face associated with it.  Robinson Dep. at 51:24–25.  Robinson is uncertain as to whether Thompson is an officer or a medical personnel.  Id. at 52:1–4.  Robinson contends that Thompson denied him medical care.  Id. at 54:1–3.

Garneau maintains that she has no personal knowledge of Robinson being assaulted in the infirmary area and never witnessed any assault on Robinson.  Garneau Decl. ¶¶ 2, 4–5.  Robinson explained that Garneau was involved with the August 1 incident in attempting to extract him from his cell.  Robinson Dep. at 49:5–17.

Sturgen attested that as a nurse working at Upstate in August 2008, she has no personal knowledge of Robinson being assaulted in the infirmary area at Upstate at the time.  Sturgen Decl. (Dkt. No. 59-14) ¶¶ 2, 4.  Sturgen never witnessed any assault on Robinson.  Id. ¶ 5.  Sturgen confirmed that she offered Robinson sick-call on August 4, 2008 but Robinson refused and presented no complaints.  Id. ¶ 14.  Robinson contends that Sturgen was a male nurse who was on duty to provide him medical care but failed to do so.  Robinson Dep. at 42:12–43:1, 50:25–51:2.

Atkinson attested that she had no personal knowledge of Robinson being assaulted in the infirmary area nor did she witness any assault on Robinson.  Atkinson Decl. (Dkt. No. 59-11) ¶¶ 2, 4–5.  Atkinson confirmed that she saw Robinson on August 7, 2008 during emergency sick-call for the August 4, 2008 incident and Robinson complained of a headache and back pain.  Id. ¶¶ 12, 15.  Atkinson found Robinson to be alert and oriented without distress or nausea.  Id. ¶¶ 12–13.  Robinson was issued Ibuprofen for pain relief and scheduled to see a physician's assistant on August 12, 2008.  Id. ¶ 14.

According to Atkinson, on August 8, 2008, Robinson requested sick-call but refused to

7

attend as he was not at the cell door and was lying on the top bunk.  Atkinson Decl. ¶ 22.

On August 12, 2008, Robinson was seen at sick-call requesting a doctor evaluation for

chronic aches.  Id. ¶ 23.  On August 14, 2008, Robinson was seen at sick-call and

requested Ultram.  Id. ¶ 24.  On August 18, 2008, Robinson was seen at sick-call

requesting a physician assistant's evaluation.  Id. ¶ 25.  Robinson requested Ibuprofen and

did not appear to be in distress.  Id. ¶ 26.  According to Atkinson, Robinson's discomfort did

not affect his ability to perform daily activities independently.  Id. ¶ 27.  Robinson was

issued Ibuprofen and Ducolax for constipation and advised to return to sick-call as

necessary.  Id. ¶ 28.

Atkinson's last contact with Robinson was on August 22, 2008, when Atkinson carried

out an outgoing draft review for Robinson's transfer to Five Points Correctional Facility

("Five Points").  Atkinson Decl. ¶ 34.  Robinson testified that he was unfamiliar with Atkinson

and believes that Atkinson was a nurse.  Robinson Dep. at 43:17–21.  Robinson named

Atkinson because she was on the "roster list" on August 4, 2008.  Id. at 47:6–9.  Robinson

contends that Atkinson should have placed Robinson on a stretcher and taken him to the

hospital.  Id. at 48:6–49:4.


### C. Injuries

According to Robinson, as a result of the August 4, 2008 assault, he had difficulties

defecating, back injuries, and mental injuries.[6]  Robinson Dep. at 61:20–62:19.  Robinson

asserts he experiences difficulties lifting heaving objects.  Id. at 63:7–9.  His back pains

---

[6] Robinson does not provide specifics on the alleged mental injuries resulting from
the August 4, 2008 use of force incident.

have diminished.  Id. at 63:13–14.  Robinson also asserts that he was blinded when he was pulled from under blankets and his toes were broken.  Id. at 65:6–66:2.

### D.  Grievances

Computer printouts from the Central Office Review Committee ("CORC") database reflects that Robinson had filed 274 appeals, none of which involved the August 1, 2008 use of force incident.  Dkt. No. 59-7 at 6–16.  Two of these appeals involved grievances UST-36272-08 and UST-36349-08.  Id. at 15.  In his UST-36272-08 appeal to CORC, Robinson made allegations concerning the August 4 assault incident.  Id. at 26.  However, CORC responded that since Robinson raised that issue for the first time in his appeal statement, that issue was not before CORC and Robinson could file a separate grievance on that issue.  Id. at 27.  There is no record evidence suggesting that Robinson filed such a grievance.  As for UST-36349-08, Robinson complained that a nurse fabricated allegations that Robinson threatened to kill himself.  Id. at 29.  CORC concluded that Robinson's allegations were unsubstantiated and advised, "the grievance program is not intended to support an adversary process . . . the grievant [should] . . . address any similar concerns to an area supervisor for any remedial action deemed necessary."  Id. at 39.

Non-party Scott Woodward, supervisor for the Inmate Grievance Program ("IGP")[7] at Upstate, attested that based on his review of the complaints filed by Robinson in August

---

[7]  The DOCCS "IGP [Inmate Grievance Program] is a three-step process that requires an inmate to:  (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response."  Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

2008, he concluded that none of the complaints involved allegations of Bessette and Chase using excessive force against Robinson on August 1, 2008, Rowe failing to protect him from the August 4, 2008 assault, or that Robinson was denied medical care by Thompson, Chase, Atkinson, Sturgen, and Garneau following the August 4, 2008 assault. Woodward Decl. (Dkt. No. 59-8) ¶ 8; Dkt. No. 59-8 at 5. There appears to be a grievance filed on August 8, 2008 involving the denial of medical treatment. Dkt. No. 59-8 at 5. However, this grievance does not appear on DOCCS's computer print-outs showing Robinson's appeals. See Dkt. No. 59-7 at 15.

Robinson testified that he is familiar with the grievance procedures at Upstate. Robinson Dep. at 10:3–16. Robinson contends he filed a grievance at Upstate concerning the assault. Id. at 55:12–15. The grievance did not go pass the IGRC level. Id. at 55:17–18. Robinson explained that officers at Five Points informed him that he could not file his grievance there because it concerned events at Upstate. Id. at 55:18–22. Robinson attempted to file the grievance at both Upstate and Five Point; however, he does not provide the Court copies of these grievances. Id. at 56:4–6, 16–23.

Robinson contends that he filed a number of grievances against defendants concerning the denial of medical care. Robinson Dep. at 58:10–17. Robinson contends that his facility transfers prevented him from obtaining CORC decisions. Id. at 58:24–59:9. Robinson wrote to CORC but continually received responses that he had filed his appeals with the incorrect department. Id. at 59:25–60:10.

## II.  Discussion

Robinson contends his Eighth Amendment rights were violated when:  (1) defendants Bessette and Chase and John Doe defendants used excessive against him; (2) defendant Rowe failed to protect him; and (3) defendants Thompson, Garneau, Sturgen, and Atkinson were deliberately indifferent to his serious medical needs.  Defendants contend that Robinson failed to exhaust his administrative remedies, Robinson's Eighth Amendment claims are without merit, and they are entitled to qualified immunity.

## A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law.  The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)  It must be apparent that no rational finder of fact

11

could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247–48.

## B.  Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior

to bringing any suits challenging prison conditions, including federal civil rights cases.

Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."  Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion for an inmate in DOCCS custody is generally achieved through the IGP.  See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, et seq.; see also note 7 supra.  Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8.  Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.  Torres v. Carry, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); see also N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days").  Disagreement with the superintendent's decision in the expedited review also requires an appeal to CORC.  N.Y. COMP. CODES. R & REGS. tit. 7, § 701.8 (g)–(h); see also Espinal v. Goord, 588 F.3d 119,

125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and

its appeal mechanism through CORC).  Exhaustion must precede filing a lawsuit.  Neal v.

Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed

therefore is insufficient.") abrogated in part on other grounds by Porter, 534 U.S. 516.

The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district
> court must apply a three-part test:  First, the court must determine
> whether administrative remedies in fact were available to the
> prisoner.  Second, if such remedies were available, the court must
> determine whether the defendants' own actions inhibited the
> inmate's exhaustion of administrative remedies, thereby requiring
> that one or more of them be equitably estopped from raising the
> failure to exhaust as a defense.  Finally, if administrative remedies
> were available and the defendants are not estopped, the court
> must determine whether any special circumstances justify the
> prisoner's failure to comply with administrative procedural
> requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y.2010) (internal citations omitted);

see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above

test as the appropriate method for excusing failure to exhaust given the present state of all

Second Circuit opinions).  "Unavailability of administrative remedies . . . is an objective

[test]: that is, would a similarly situated individual of ordinary firmness have deemed them

unavailable."  Kasiem v. Switz, 756 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2010) (internal

quotation marks and citations omitted).  Estoppel occurs when "an inmate reasonably

understands that pursuing a grievance through the administrative process will be futile or

impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance

forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure."

Id. at 577 (internal quotation marks and citations omitted).  If an inmate claims estoppel and

14

continues to file complaints and grievances, the exception is inapplicable.  Id.  Special

circumstances exist when an inmate's failure to comply can be justified.  Id. (citations

omitted).  Justification is found "by looking at the circumstances which might

understandably lead usually uncounselled prisoners to fail to grieve in the normally required

way."  Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).

When considering whether special circumstances exist, the inmate's actions must have

given prison officials sufficient information to put them on notice of the complaints, despite

the inmate's failure to utilize formal grievance procedures, as well as give the prison time to

evaluate the claims.  Macias v. Zenk, 495 F.3d 37, 43–44 (2d Cir. 2007).  Thus, exhaustion

requires satisfaction of both a substantive prong, requiring prison officials to be placed on

notice of the complaint, and a procedural prong, expecting inmates to present their

grievances within a formerly prescribed framework permitting both investigation and

remediation.  Id.

In this case, DOCCS records do not show any grievances which were filed or appealed

regarding the August 1, 2008 assault incident.  While there are two appeals related to the

August 4, 2008 assault incident, they do not satisfy Robinson's exhaustion requirements.

One appeal raised assault allegations for the first time that were not in the originating

grievance.  Thus, CORC declined to consider those allegations and advised Robinson to

file a separate grievance raising those issues.  As for the second appeal, Robinson lodged

the complaint against a nurse who allegedly fabricated allegations against him.  However,

this claim is not currently before the Court.  Finally, while there are grievances filed in

August 2008 concerning medical needs, none of them were lodged against Thompson,

Garneau, Sturgen, and Atkinson regarding the use of force incident.  Dkt. No. 3-4 at 56–57.

Robinson contends that he filed a grievance surrounding the August 4 use of force incident and that his facility transfers prevented him from obtaining CORC decisions should constitute a special circumstance. However, Robinson failed to include a copy of the complaint, grievance, or subsequent appeals to CORC based on said grievance. Further, Robinson was transferred "within correctional facilities governed by the same governmental agency," which does "not excuse exhaustion." Hartry v. Cnty. of Suffolk, 755 F. Supp. 2d 422, 434 (E.D.N.Y. 2010) (citing cases). Thus, Robinson's conclusory claims are insufficient to defeat the computer print outs generated by DOCCS. Moreover, Robinson fails to contend that he was unaware of the grievance procedures or they were unavailable to him to excuse his failure to exhaust. Conversely, Robinson's deposition testimony, in conjunction with his grievance history, indicated that he was fully aware of how the process worked and he successfully filed and appealed other various grievances both prior and subsequent to the alleged use of force. Thus, record evidence vitiates any contention that Robinson should be excused from his exhaustion failures. Gayle, 716 F. Supp. 2d at 298.

Accordingly, defendants' motion should be granted on this ground and all claims against defendants should be dismissed.

### C.  Eighth Amendment

Even if Robinson has successfully exhausted his administrative remedies, his Eighth Amendment claims against defendants cannot survive this motion for summary judgment. The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII.

16

## 1. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9–10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9–10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Sims, 230 F.3d at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, during Robinson's deposition, Robinson withdrew his excessive force claims against defendants Bessette and Chase concerning events that occurred on August 1, 2008.  Therefore, these claims are no longer before the Court.  Even if Robinson did not withdraw those claims, he has failed to establish a issue of material fact with respect to either prong of the test.  First, Robinson does not make any supported allegations of an injury he suffered as a result from the use of force incident.  Conversely, defendants submit photographs, a video, a use of force report, and interdepartmental memoranda, all of which indicate that Robinson did not incur any injury from being handcuffed against the wall and escorted down the prison block.  Second, Robinson does not assert that defendants were malicious or wanton in using force against him during the pat-frisk and subsequent handcuffing.  Sims, 230 F.3d at 21.  The record does not indicate the contrary.  In fact, defendants' submissions show that the officers used force because Robinson, without an order and on his own accord, turned around and away from the wall.  Such force was used in good-faith to maintain discipline.  Sims, 230 F.3d at 21.  Further, Robinson conceded that he initially did not want to leave his cell.  Robinson's refusal of a direct order can be said to have fairly created a threat against defendants.  Thus, given Robinson's bare, conclusory,

18

and unsubstantiated allegations against Bessette and Chase and the eventual withdrawal of such claims, Robinson's claims against defendants cannot survive this motion for summary judgment.

As for the August 4, 2008 incident, Robinson contends that he was physically and sexually assaulted, in the middle of the night, while sleeping. In accordance with Federal Rules of Civil Procedures Rule 4(m), defendants must be served within 120 days of the filing of the complaint, with which Robinson failed to comply. FED. R. CIV. P. 4(m). Despite the Court granting Robinson time to identify the "John Doe" defendants during the discovery period, Robinson has failed to identify or locate any of the defendants who allegedly assaulted him. See note 1 supra. While Robinson's medical records indicate that Robinson experienced some kind of physical pain following August 4, 2008 and made numerous allegations of the sexual assault to medical personnel, Robinson does not direct these accusations against any particular individual in those complaints nor in his attempt to grieve the matter through the CORC appeal.

Further, record evidence does not contain any specifics of the alleged assault other than Robinson was silenced and assaulted. Robinson has essentially proffered conclusory and unsubstantiated allegations that unidentified individuals engaged in the assaultive actions while failing to provide specific details about his injuries, the acts carried out by the unidentified defendants, or the unidentified officers themselves. See, e.g., Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) ("[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a general litany of general conclusions that shock but have no meaning.") (citation omitted). Given that there is no identified defendant against whom Robinson can

lodge an excessive force claim, Robinson's excessive force claims involving the August 4, 2008 incident cannot proceed. As such, no reasonable factfinder could find in favor of Robinson concerning the August 4, 2008 incident. Gallo, 22 F.3d at 1223–24. Accordingly, defendants' motion on this ground should be granted.

### 2. Failure to Protect

The Eighth Amendment also obliged defendants to protect Robinson from known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 832. Where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31–32 (1993)).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). To state a cognizable failure to protect claim, (1) "the inmate [must be] incarcerated under conditions imposing a substantial risk of serious harm," and (2) the prison office must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Matthews v. Armitage, 36 F. Supp. 2d 121, 124–25 (N.D.N.Y. 1999) (internal citations and quotations omitted).

Here, Robinson contends that Rowe stood by and watched as other officers assaulted

20

Robinson.  However, this claim against Rowe should also be dismissed for the same reasons discussed supra in dismissing Robinson's excessive force claims.  Robinson's generalizations about the assault itself, the resulting injuries, as well as failing to identify which officers were involved in the assault, render this claim conclusory and insufficient.  As such, a reasonable factfinder would be unable to find in favor of Robinson.  Gallo, 22 F.3d at 1223–24.  Accordingly, defendants' motion on this ground should be granted.

### 3.  Medical Indifference

The Eighth Amendment prohibition extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily

21

activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).


### 1. Thompson

Thompson attested that he is neither a medical personnel nor authorized to provide medical services to inmates. "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" Baumann v. Walsh, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (citations omitted). Here, Thompson maintains that he was never aware of Robinson being assaulted or requiring medical care. Aside from Robinson's inability to recall Thompson's face and

uncertainty as to whether or not Thompson was a medical personnel and why Thompson was named a defendant, Robinson has provided no other specifics showing that Thompson had intentionally delayed Robinson access to necessary medical care. Baumann, 36 F. Supp. 2d at 512. Given Robinson's conclusory and unsubstantiated allegations against Thompson, a reasonable factfinder would not be able to find in favor of Robinson. Gallo, 22 F.3d at 1223–24. Accordingly, defendants' motion on this ground should be granted.

**2. Garneau**

Robinson contends that Garneau was involved in the August 1, 2008 cell-extraction incident. However, as previously discussed, Robinson has conceded that no excessive force was used against him when he voluntarily exited his cell and such claims involving the cell-extraction are dismissed. Further, Robinson did not allege any resulting injury from the cell-extraction. Furthermore, Robinson does not allege any facts going to how Garneau intentionally denied or delayed him access to medical attention and treatment. Chance, 143 F.3d at 702. Conversely, Garneau attested that when she learned of an alleged sexual assault against Robinson, she notified a physician of those allegations. Robinson's allegations as against Garneau are wholly conclusory and unsubstantiated and do not show more than some doubt or speculation as to the facts' true nature. Matsushita Elec. Indus. Co., 475 U.S. at 586. As such, Robinson has failed to show the presence of a genuine issue of material fact in his medical indifference claim against Garneau. Anderson, 477 U.S. at 247–48. Accordingly, defendants' motion on this ground should be granted.

23

### 3. Sturgen

Robinson contends that Sturgen is a male nurse who was deliberately indifferent to his medical needs. As an initial matter, Sturgen is a female nurse. Sturgen attempted to transport Robinson to the medical clinic during sick-call on August 4, 2008; however, Robinson refused to attend. Thus, any lack of or delay in receiving an examination or treatment was due to Robinson's actions. As such, the record belies Robinson's unsubstantiated assertion that Sturgen either intentionally denied or delayed him access to medical care. Estelle, 429 U.S. at 104. This cannot now be crafted into an Eighth Amendment claim. Robinson does not provide any further assertions against Sturgen. Given Robinson's conclusory allegations, uncertainty with respect to Sturgen's identity, and his refusals to attend his requested sick-call, Robinson's medical indifference claim against Sturgen cannot stand. Accordingly, defendants' motion on this ground should be granted.

### 4. Atkinson

Finally, Robinson contends that Atkinson was indifferent to his medical needs concerning the August 4, 2008 assault incident. Specifically, Robinson is unfamiliar with Atkinson and named her as a defendant because she was on the roster list for that day. Robinson further contends that despite his refusals to attend sick-call, Atkinson should have placed him on a stretcher and transported him to the hospital.

The record belies the medical indifference allegations against Atkinson. Atkinson examined and treated Robinson multiple times whenever Robinson sought medical assistance. Further, when Robinson appeared on morning sick-call and made allegations

involving the August 7, 2008 assault, Atkinson reviewed Robinson's medical charts to determine whether the assault was reported. Furthermore, Robinson testified that he was unfamiliar with Atkinson and named her as a defendant simply because she was scheduled to work on August 4, 2008. Robinson has failed to proffer any evidence showing that Atkinson had intentionally denied him medical care. Estelle, 429 U.S. at 104. Moreover, Robinson's argument that Atkinson should have placed him on a stretcher and taken to the hospital is merely a disagreement with Atkinson over the form of treatment. Such an allegation is insufficient to establish an Eighth Amendment violation. Sonds, 151 F. Supp. 2d at 312. Accordingly, defendants' motion on this ground should be granted.

### D. Qualified Immunity

Defendants claims that even if Robinson's constitutional claims are substantiated, they are nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there

25

would be a constitutional violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be addressed with respect to Robinson's Eighth Amendment claims because, as discussed <u>supra</u>, it has not been shown that defendants violated Robinson's Eighth Amendment rights.

Accordingly, defendants' motion on this ground should be granted.


### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 59) be **GRANTED** and Robinson's complaint (Dkt. No. 1) be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: May 24, 2013
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge